# United States Court of Federal Claims

No. 18-2003 C
Filed under seal: February 4, 2019
Reissued: February 22, 2019[1]

| | |
|---|---|
| TECHNICA LLC, | |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | Bid-Protest; Government Accountability Office; Competition in Contracting Act; 31 U.S.C. § 3553; Automatic CICA Stay; CICA Stay Override |
| Defendant | |
| and | |
| AVIATION SECURITY MANAGEMENT, LLC, | |
| Defendant-Intervenor. | |

*Robert Kiel Tompkins*, Holland & Knight, LLP, Washington, DC, attorney for plaintiff.

*Stephen Carl Tosini*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

*Marina Burton Blickley*, Odin, Feldman & Pittleman, Reston, VA, attorney for defendant-intervenor.

## OPINION AND ORDER

*SMITH*, **Senior Judge**

      This matter is before the Court on plaintiff's Complaint for Injunctive and Declaratory Relief. Plaintiff, Technica LLC ("Technica") contests a United States Department of Homeland Security, Transportation Security Administration's ("Agency" or "TSA") decision to override the automatic stay of performance required by the Competition in Contracting Act ("CICA"), arguing that the TSA's decision to override the automatic CICA stay was an arbitrary and

---

[1] An unredacted version of this opinion was issued under seal on February 4, 2019. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

capricious abuse of discretion. Plaintiff requests that this Court enjoin the Agency and Aviation Security Management, LLC ("ASM" or "defendant-intervenor") from proceeding with contract performance, pending the outcome of Technica's protest with the Government Accountability Office ("GAO"). For the following reasons, plaintiff's Motion for a Preliminary Injunction is granted, and contract performance is stayed pursuant to 31 U.S.C. § 3553 until the statutory period for the underlying GAO protest has lapsed.

## I. Findings of Fact

TSA's Screening Partnership Program ("SPP") is a statutorily authorized program under the Aviation and Transportation Security Act ("ATSA") of 2001, which grants the Agency authority to procure airport security and screening services through the use of a private contract screening workforce under federal oversight. Complaint (hereinafter "Compl.") at 4. On January 4, 2016, the TSA awarded Contract HSTS05-16-C-SPP020 to contractor, ISS Action, Inc. ("ISS"), for security screening at Punta Gorda Airport ("PGD"). Administrative Record (hereinafter "AR") 697. The contract period of performance was for a base period of twelve months with possible one-year option periods to follow it. *Id.* On July 9, 2018, the contracting officer decided not to exercise the final two option periods, citing ███████████████, including ████████████████████████████████████████████████████████. On July 27, 2018, the TSA issued Request for Proposals 70T05018RSNSPP176 ("RFP" or "Solicitation"), pursuant to the agency-wide indefinite delivery indefinite quantity ("IDIQ") Contract No. HSTS05-16-D-SPP902. AR 1. After evaluating the proposals of the three offerors, the TSA determined that Technica presented the least competitive proposal. AR 604. The task order was awarded to ASM, and Technica's GAO protest soon followed.

On December 13, 2018, TSA issued its Determinations and Findings ("D&F"), authorizing the override of the GAO's automatic CICA stay of performance. *See generally* AR 696–700. In making that decision, the contracting officer cited "urgent and compelling circumstances," because the peak travel period at PGD overlapped with the likely 100-day protest period at the GAO. AR 697. The TSA further determined that "[t]here are no significant operational improvements in performance since the Contracting Officer's July 9, 2018 determination that articulated the contract vehicle and performance as a determining factor to not exercise the remaining option years." *Id.* The contracting officer concluded that "[t]he only viable alternative solution to mitigate the risk with the current contract at the peak travel season is to augment the operations with additional federal staff," but that "[t]here are no significant numbers of certified federal staff available to move from another federal airport and use them to reduce the security risk at this location without impacting the operations at other locations." *Id.*

Technica filed its Complaint and its Motion for Preliminary Injunction with this Court on December 28, 2018. *See generally* Compl.; *see also* Plaintiff's Motion and Memorandum of Points and Authorities in Support of a Temporary Restraining Order and Preliminary Injunction (hereinafter "Pl.'s Mot."). On January 11, 2019, the government filed the Administrative Record and its Response to plaintiff's Motion for Preliminary Injunction, and defendant-intervenor filed its Response to plaintiff's Motion for Preliminary Injunction. *See generally* Defendant's

Opposition to Plaintiff's Application for a Temporary Restraining Order and Motion for Preliminary Injunction (hereinafter "Def.'s Resp."); *see also* Defendant-Intervenor Aviation Security Management, LLC's Opposition to Plaintiff Technica LLC's Motion and Memorandum of Points and Authorities in Support of a Temporary Restraining Order and Preliminary Injunction (hereinafter "Def.-Inv.'s Resp."). On January 18, 2019, plaintiff filed its Reply in support of its Motion for Preliminary Injunction. *See generally* Plaintiff's Reply in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction (hereinafter "Pl.'s Reply"). Oral Argument was held on January 28, 2019. Plaintiff's Motion for Preliminary Injunction is fully briefed and ripe for review.

## II.     Applicable Legal Standard

### A.     Jurisdiction and Standard of Review

This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for an agency action. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). A motion for judgment on the Administrative Record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") assesses whether the administrative body, given all the disputed and undisputed facts in the record, acted in a manner that complied with the legal standards governing the decision under review. *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006); *Greene v. United States*, 65 Fed. Cl. 375, 382 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005)). Under Rule 52.1 of the RCFC, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum*, 404 F.3d at 1354. Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id*. at 1355.

### B.     Competition in Contracting Act Automatic Stay

When a bid protest action is initiated at the GAO, an automatic stay of the protested contract award is triggered under the Competition in Contracting Act until the protest action is resolved. 31 U.S.C. § 3553(c)(1). This automatic stay serves the important purpose of preserving "competition in contracting and ensur[ing] a fair and effective process at the GAO." *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 710 (2006) (citing *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25, 31 (2006)). "An agency may override an automatic stay if it notifies the GAO in writing that either 'performance of the contract is in the best interests of the United States,' or 'urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.'" *Nortel Gov't Sols., Inc. v. United States*, 84 Fed. Cl. 243, 247 (2008) (citing 31 U.S.C. § 3553(d)(3)(C)). When an agency overrides a CICA stay, the Court reviews that decision pursuant to the standards established by the APA, 5 U.S.C. § 706. *Planetspace Inc. v. United States*, 86 Fed. Cl. 566, 567 (2009); *Alion Science & Tech. Corp. v. United States*, 69

Fed. Cl. 14, 23 (2005).  A protestor challenging an override decision must establish that the "decision . . . was arbitrary and capricious."  *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 660 (2003).

In reviewing an agency's decision to override the CICA automatic stay, this Court has routinely applied the four-part test established in *Reilly's Wholesale Produce v. United States*.  *Reilly's Wholesale*, 73 Fed. Cl. at 705.  *Nortel* sets forth the standard as follows:

> When asserting that urgent and compelling circumstances require immediate performance of a contract, there are several factors an agency must consider, including: (1) "whether significant adverse consequences will necessarily occur if the stay is not overridden"; (2) "whether reasonable alternatives to the override exist"; (3) "how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare[s] to the benefits associated with the approach being considered for addressing the agency's needs"; and (4) the impact of the override on competition and the integrity of the procurement system, as reflected in CICA.

*Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed. Cl. at 711); *see also Superior Helicopter LLC v. United States*, 78 Fed. Cl. 181, 189 (2007).

The question before the Court is whether the Agency's D&F substantively met the arbitrary and capricious APA review standard that applies under 28 U.S.C. § 1491(b)(4).  *See RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999).  Under the legal scheme set out in *Motor Vehicle Manufacturers Ass'n. of the United States v. State Farm Mutual Automobile Insurance Co.*, an agency decision

> would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

### III.  Discussion

#### A.  Reilly's Wholesale Test

When an agency is making a decision on whether or not to override the automatic CICA stay, application of the *Reilly's Wholesale* test is not required.  However, it is a useful analytical tool for the Court in reviewing whether the override was arbitrary and capricious.  "In highlighting these particular factors, our court is not substituting its judgment for that of an agency concerning aspects that are important for a particular procurement, but is rather

identifying factors that would logically be necessary or irrelevant to override decisions in general." *Supreme Foodservice*, 109 Fed. Cl. at 386. While an agency is not required to incorporate the *Reilly's Wholesale* factors, in the case at bar, TSA listed those factors in the D&F, outlining its consideration of each one. AR 698–99. The government argues that the *Reilly's Wholesale* factors are not dispositive, and that this Court could follow in the vein of *Planetspace Inc. v. United States* which merely asks whether the agency's decision was arbitrary or capricious. Def.'s Resp. at 10; *Planetspace Inc.*, 86 Fed. Cl. at 567. However, given the substantive use of the *Reilly's Wholesale* factors by the Agency itself, it seems only logical that this Court use this analytical framework as well, consistent with the majority of other CICA override decisions in this Court.

The first factor in the *Reilly's Wholesale* test focuses on "whether significant adverse consequences will necessarily occur if the stay is not overridden." *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711). In its D&F, the Agency considered the first factor and found that ███████████████████████████████████████████████████████████████████████████████████████. The Agency goes on to state that "[t]here are no changes in the screening and scheduling approach that would indicate that ██████████████████████████████████████████████████ since the [Contracting Officer's July 9, 2018 determination]." *Id.* These factors, the Agency states, support the "urgent and compelling" decision to override the automatic stay of the new task order. *Id.* at 697.

In response, plaintiff argues that the TSA's determination was flawed for the following reasons: "(1) it contradicted the contemporary evidence that was before TSA when it issued the override; and (2) it relied on incorrect and incomplete factual findings." Pl.'s Reply at 4–5. First, plaintiff points to the █████████████████████████████████ based on ISS's incumbent contract performance, which the RFP defines as █████████████████████ ███████████████████████████████████████████████. Moreover, the D&F evaluated ██████████████████████, but made no findings regarding whether ASM's performance would be better than that of ISS, a key component in the adverse consequences analysis. Finally, it is important to note that awardees are required to offer employment on a first right of refusal to employees under the incumbent contract pursuant to Federal Acquisition Regulation ("FAR") 52.222-17. AR 687; 48 C.F.R. § 52.222-17 (2014). Practically applied, this regulation will result in the final awardee, be it ASM or Technica, performing the contract with a workforce almost entirely comprised of ISS employees. As such, this Court finds it difficult to believe that ASM's performance will be sufficiently superior, such that an override of the automatic CICA stay is warranted.

The *Reilly's Wholesale* test's second factor is "whether reasonable alternatives to the override exist." *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711). In the D&F, the Agency determined that the only viable alternative to mitigate risk "is to augment the operations with additional federal staff." AR 698. However, TSA also determined that option to be infeasible, as "[t]here are no significant numbers of certified federal staff available to move from another federal airport and use them to reduce the security risk at this location without impacting the operations at other locations." *Id.* In response, plaintiff argues that ISS is

currently operating with more Full Time Employees than the number provided in the Task Order and with a provision for a fifth security lane, which indicates that ISS's current contract exceeds the Task Order in dispute at the GAO. Pl.'s Reply at 11 (citing AR 658). Moreover, plaintiff points out that the TSA never analyzed whether granting ISS's November 2018 Request for Equitable Adjustment, providing ISS with additional employees, would remedy the alleged problem. Pl.'s Reply at 11–12 (citing generally Pl.'s Mot. Supp. Admin. Rec. Ex. 1). As the circumstances of ISS's incumbent contract appears to meet or exceed the requirements under the new IDIQ task order, it seems clear to this Court that reasonable alternatives existed other than TSA's decision to override the CICA stay, and, as such, the reasonable alternatives prong cannot be said to weigh in favor of the Agency.

The third *Reilly's Wholesale* factor examines "how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compare[s] to the benefits associated with the approach being considered for addressing the agency's needs." *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed Cl. at 711). The Agency estimated that the cost of transitioning to a new vendor is $498,232.00. AR 699. The D&F further indicated that, absent a transition to a new vendor, "the cost of supplementing the existing operations with federal assets with the expected needed operational staff (25 certified officers) is $17,500.00 a day based on the National Deployment Force cost structure to include all travel and per diem." *Id.* Plaintiff argues that the government's cost-benefit analysis is fatally flawed. Pl.'s Reply at 12. For example, plaintiff contends that the Agency did not consider the additional costs should GAO sustain plaintiff's protest. *Id.* The Agency insufficiently demonstrated that the benefits of the override would outweigh the costs of proceeding with the CICA stay in place. Thus, the cost-benefit analysis cannot be said to definitively weigh in favor of the override.

The fourth factor in the *Reilly's Wholesale* test addresses "the impact of the override on competition and the integrity of the procurement system, as reflected in CICA." *Nortel*, 84 Fed. Cl. at 247 (citing *Reilly's Wholesale*, 73 Fed. Cl. at 711). This Court has previously held that "Congress has determined that the public interest is served by the imposition of an automatic stay to allow the GAO an opportunity to ascertain the merits of a bid protest." *URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 674, 677 (2012). "After repeated elaboration, it should be beyond controversy that the point of the CICA automatic stay was to enhance the GAO as a forum for bid protests, so that the integrity of the competitive procurement process could be protected." *Supreme Foodservice*, 109 Fed. Cl. at 385; s*ee also PMTech*, 95 Fed. Cl. at 346–47; *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100, 112 (2006); *PGBA, LLC*, 57 Fed. Cl. at 657–58. Essentially, "'the automatic stay is intended to preserve the *status quo* during the pendency of the protest so that an agency would not cavalierly disregard GAO's recommendations to cancel the challenged award,' thereby 'preserv[ing] competition in contracting and ensur[ing] a fair and effective process at the GAO.'" *Reilly's Wholesale*, 73 Fed. Cl. at 710 (alterations in original) (quoting *Advanced Sys. Dev.*, 72 Fed. Cl. at 31).

By refusing to respect the CICA stay, the Agency has put itself in a prime position to, at a later point in the protest process, argue that it would be unfairly burdened if the award to ASM were set aside, because the TSA would be forced to replicate the transition period and take on the additional costs associated with rewarding the contract. If this Court were to allow the Agency

override to stand, it would ultimately be pulling the CICA teeth from the GAO, rendering it a government body with a bark but no ability to bite. This is not what Congress intended. As such, this Court must invalidate the Agency's decision to override the stay.

  **B.**  **Injunctive Relief**

  While plaintiff's Motion was styled as one for a preliminary injunction, Technica's claim is really asking for declaratory relief. "Declaratory relief is particularly appropriate in bid protest actions contesting agency stay override determinations entered pursuant to 31 U.S.C. § 3553(d)(3)(C)." *Chapman Law Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005). This Court agrees with the reasoning set forth in *Chapman Law Firm*, which stated the following:

> Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO. Thus, it would be contrary to the legislative scheme to impose such an additional requirement, upon finding that an agency override determination lacks validity, in order to reinstate the statutory stay applicable during the GAO protest period. Declaratory relief preserves the scheme that Congress enacted.

*Chapman Law Firm*, 65 Fed. Cl. at 424. "Congress enacted a statute requiring *less* than the typical injunctive relief factors." *Supreme Foodservice GmbH*, 109 Fed. Cl. at 397 (emphasis in original). "In creating the CICA stay of performance, Congress decided that the injunctive relief factors need not be invoked when a bid protest is timely filed with the GAO, instead requiring that contract performance be stayed automatically." *Id.*; *see also* 31 U.S.C. § 3553(d)(3)(A)–(B). "To allow an arbitrary override to insert the injunctive relief requirements into the process would convert the CICA stay to something other than what Congress created." *Id.*

  When making a determination on whether or not to apply an injunction, this Court typically evaluates the following four factors: (1) the likelihood of success on the merits; (2) whether plaintiff will suffer irreparable harm absent an injunction; (3) balance of harm to the respective parties if the injunction is either granted or not granted; and (4) the public interest involved in granting the injunction. *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009); *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004); *Mobile Med. Int'l Corp. v. United States*, 95 Fed. Cl. 706, 742–43 (2010). Regardless of Congress' decision to exclude the elements of a preliminary injunction from the CICA automatic stay override analysis, "the likelihood of success on the merits" factor is wholly inapplicable to CICA overrides. The purpose of a preliminary injunction is to preserve the status quo during the pendency of a bid protest while the Court makes a decision on the merits. When a plaintiff challenges an agency's decision to override the automatic CICA stay, the Court never proceeds to briefing or a hearing on the merits in the traditional sense. Instead, the Court is asked to review the override, while the GAO engages in a review of the merits. Once the Court has come to a decision on the override, jurisdiction over the protest reverts back to the GAO. If this Court were to impose an injunction during its review of the CICA override, it would more closely resemble a permanent injunction, as it would ultimately dispose of the case in this Court. However, a permanent injunction is not truly what the protestor seeks, because the protestor is

not requesting the Agency cease all work in perpetuity, but rather that the Agency abide by the CICA stay.

**IV.     Conclusion**

For the foregoing reasons, the Court concludes that the decision to override the CICA stay of performance issued by the U.S. Department of Homeland Security, Transportation Security Administration on December 14, 2018, was arbitrary, capricious, and contrary to 31 U.S.C. § 3553(d)(3)(C)(i), and is thus invalid.  The plaintiff's Motion for Preliminary Injunction is **GRANTED**, and performance is **STAYED** until the statutory period for GAO protests has lapsed.  Additionally, plaintiff's Motion to Supplement the Administrative Record is hereby **GRANTED IN PART, DENIED IN PART**, and the Court grants leave for the uncontested documents to be included in the Administrative Record.  The Clerk is directed to enter judgment in favor of plaintiff, consistent with this opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2]     This opinion shall be unsealed, as issued, after February 19, 2019, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.